Potter, J.
The action was brought to recover, and a recovery was had, by the plaintiff, for the balance of moneys placed in defendant’s hands as a margin or indemnity against loss in the sale of wheat on plaintiff’s, account.
The agreement between the parties, and out of which this controversy has arisen, was made through their respective agents or brokers, and is substantially of this, ■nature; that the plaintiff, on the 9th of April, 1885, employed the defendants to sell for him in the month of May following, 50,000 bushels of wheat in the Chicago market for eighty-seven and five-eighths cents per bushel, the plaintiff agreeing to pay defendants commissions of one-eighth per cent each for selling and buying, and depositing with them reasonable margins ranging from three to six per cent from time to time; that the defendents accepted these terms that in pursuance of such agreement the plaintiff deposited with defendants’ agent, at their office in New York city, from time to time, margins aggregating $3,000.
The rights and duties of these parties towards each other under an agreement of such nature are that the defendants will not buy in to cover the liability of the plaintiff to deliver the wheat in May until that time, and will then buy it at the lowest price prevailing in the market.
This situation or relation of the parties is, however, cubject to these limitations; that the plaintiff had the right to require the defendants to buy in the wheat to fulfill the plaintiff’s obligation to deliver the wheat in the meantime,, *473 and the defendants had the right to require such margins, until May, or the time such order to purchase was given, as a reasonable judgment would require for their indemnity, and in default of putting up such reasonable margins, within a reasonable time, the defendants would have the right to buy in the wheat at the prices ruling in the market at the time of buying in and charging the plaintiff with any deficiency between margin and the price paid to buy in. The plaintiff contends that the defendants did not buy in the wheat at the price specified in the stop order;, that plaintiff gave defendants, or at a price ruling at the. time that plaintiff was reasonably entitled to have, to furnish further margins; but disregarding their duty in both those respects, bought it in at ninety-one and three-eighths, when they could, and should have bought at eighty-seven, and three-eighths, and thus used and appropriated to themselves the $2,000 which this action is brought to recover of plaintiffs $3,000 margins.
The other one thousand having been repaid to plaintiffs, before the commencement of the action, the theory of plaintiff’s action is that defendants having violated their duty in the premises, he has a right to repudiate the purchase by defendants and recover the margins.
The defendants’ contention is that they bought in the wheat at the price ruling at the time they had a right to-purchase it under the plaintiff’s order, called a “stop order,” or by reason of plaintiff’s default in furnishing-margins, and that the plaintiff is bound by their action and not at liberty to repudiate the purchase.
Evidence was introduced upon the trial which is claimed by the parties, respectively, to have supported his side of' the contention. Those questions of fact were very properly and plainly submitted to the jury. The errors complained of by the defendants do not relate to the charge of the-court upon the submission of these questions but to rulings in response to requests to charge and to the admissibility of the evidence.
After a pretty careful examination of the alleged errors, we are satisfied that a new trial should not be granted on. account of them.
I will first notice those in relation to the charge. The request “to suggest,” if it is, be treated- as a request to charge, is twofold, embracing a proposition of law and a statement of fact. As a whole it was improper to charge the request.
The part of the request, and which if tantamount to a question of law that there is no evidence that Mr. Dawson communicated the matter to Mr. Wright, is altogether *474 too indefinite for any practical purpose. Mr Dawson was the agent of plaintiff in these transactions and had various conversations and negotiations with Mr. Brown, the agent of defendants. Indeed the entire business was done through Dawson and Brown.
The counsel should have specified “the matter ” to the court. It is impossible for ttie court to know what matter the counsel has in his mind without some reference by counsel to “the matter.” Besides the entire transaction and conversations were with Brown, the agent of Wright, and it was immaterial whether any of them was communicated to Wright or not.
As to the request “to suggest ” the fact, it is not any part of the duty of a court to detail the evidence to the jury. That is the province of counsel in summing up the case. That had already been done by counsel, and to a proper extent by the court already in his charge upon the questions of fact submitted. Besides, it was a controverted fact whether the letter demanding margin was sent after the conversation upon that subject. The charge of the court in respect to the rule of damages was correct.
The true question in the case for the jury to determine, as we have stated before, was whether the defendants were warranted in buying in the wheat at the price and time of its purchase, under the stop order or because of default in the margin.
This presentation of the question to the jury was proper and was not excepted to by defendants’ counsel. Indeed the charge was more favorable to the defendants than they were entitled to. It permitted the defendants to justify their buying in under the stop order. I am inclined to the opinion that the defendants were not entitled to justify that act under the stop order. The stop order directed defendants to buy in when wheat was ninety-three and three-eighths.
“The meaning of a stop order is to await a certain figure, and whenever that figure is reached to stop the transaction by buying in as well as possible.” Porter v. Wormser, 94 N. Y., 443.
Defendants did not wait till it reached ninety-three and three-eighths, to which plaintiff’s margin carries it, but bought in at ninety-one and three-eighths.
But aside from this view, which puts the justification for the purchase upon the plaintiffs stop order out of the case, and assuming it was properly submitted to the jury with the other question, viz.: Default in margin, the jury were instructed, if the buying in was not authorized by the stop order or default in margin, to render a verdict in favor of plaintiff for $2,000.
*475 The legal effect of this finding was that defendants refused to carry out their contract with plaintiff, and that when they refused to do so plaintiff was entitled to the return of the margin he had deposited with them for that ■purpose-, if the. plaintiff saw fit to repudiate the action of defendants and demand to be repaid his margin, as he did.
The court in his charge proper had said nothing about damages for conversion and the term was not used until it was mentioned in the counsel’s request to charge in respect to the rule of damages for conversion.
There was no conversion in the case. There was nothing to convert. The plaintiff had no wheat to be converted. There could not be a pretense of a conversion till defendants made this unauthorized, as the jury found, purchase of wheat which the plaintiff at once repudicated.
It might be said the wheat never actually existed between these parties and was never converted by anybody.
With all respect, it seems that the cases cited by defendants have no application to this case. Those cases relate to transactions where parties have contracted to sell and deliver property and have failed to do so, or where a party has made an unauthorized sale or disposition of property or stocks placed in his hands to sell and to the rule of damages that is applicable to such cases. In short, the court correctly charged the rule of damages in this case, by whatsoever name counsel was pleased to call it.
We have now come to consider the rulings upon the admissibility of evidence.
There are several such rulings, but it will not be necessary to consider them separately, for most of them are susceptible of classification and of treatment in that form. Much the larger class relate to the reception of evidence as to the prices at which wheat sold in the Chicago market and the mode of obtaining and communicating those prices to other points.
I think the entries made of prices, by the officers and employees of the board of trade, under the circumstances detailed are evidence. They were objected to as hearsay. A knowledge of those prices is obtained by those who are present at the sale in the employment of the board of trade to obtain these facts and hear the conversations and negotiations of the parties making the transaction. They are just as competent as the parties themselves to the transaction would be to testify to what was said and done by the parties.
_ They at the same time make memoranda of the transactions, and the same are at once, and before separation or proceeding to any other business, entered in a book. It was •competent to show that this book, as a matter of fact, is *476 used and relied upon by the board of trade and the dealers', and persons having business transactions and arbitrators to settle differences on change.
In a sense the persons collecting and recording those transactions, sales and prices, are public officers or men in the common employment of all the members of the board of trade and parties dealing at the board or through its members or their agents, as were the defendants.
Entries thus made would at least be evidence, and presumptively correct with members of the board and those dealing through them.
These entries being evidence, it was proper to introduce sworn or authenticated copies of them, especially where the original was an official paper or detained at the business office out of the jurisdiction of a subpoena or was not accessible.
It should be observed that many of the rulings under which portions of this evidence were received were not excepted to; that to some portions of it, the objection was simply that the evidence was immaterial, and that further on in the trial this kind of evidence was not objected to at all, and that when the defendants had the case, they had resort to the same kind of evidence as that to which they had made objection when introduced in behalf of.' plaintiff.
There are one or two objections and exceptions to evidence of another character which ought to be noticed. The' letters of plaintiff to defendants, dated respectively April sixteenth and April seventeenth; the former was properly received, as it was in reply to one from defendants stating what they had done in the matter, repudiating the same.. The latter was proper, and it was necessary to make a demand for a return of margins before the plaintiff could maintain an action to recover them.
But if the letter had not contained the demand, or if a. demand had not been essential, I am clearly of the opinion the letters were properly received in evidence. It was a part of a correspondence between the parties in relation to-a transaction on the day succeeding in which the plaintiff states his ground of complaint and demands redress.
See cases in the opinion of the court cited by defendants, counsel. Peck v, Valentine, 94 N. Y., 569.
The exclusion of the question to the witness Brown as-to the excitement and condition of the Chicago market. ' was proper.
It called for the inference of the witness who was not in Chicago but in New York. Facts should be given the jury,, as had been done by those at Chicago, to draw such inference from. The statement contained in defendants books. *477 was correctly received in evidence, for the book was shown to have come from the defendants office either at New York or Chicago.
I am of the opinion there are no errors for which the judgment should be set aside, and it is therefore affirmed, with costs.
Lawrence, J., concurs.